UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RONALD RUSSELL,

*Petitioner*,

– against –

MARILYN KOPP,

*Respondent*.

**MEMORANDUM & ORDER**
24-cv-07002 (NCM)

**NATASHA C. MERLE**, United States District Judge:

Ronald Russell, who is currently incarcerated at Sing Sing Correctional Facility, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mr. Russell was convicted after a jury trial of one count of Murder in the Second Degree and two counts of Criminal Possession of a Weapon in the Second Degree. Appearing *pro se*, Mr. Russell brings this petition[1] for habeas relief, alleging that he received ineffective assistance of counsel during trial and an excessive sentence. For the reasons set forth below, Mr. Russell's petition is **DENIED**.

[1] The Court hereinafter refers to the Petition for Writ of Habeas Corpus, ECF No. 1, as the "Pet."; respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, ECF No. 6, as the "Opp'n."; and petitioner's Opposition to Respondent's Motion to Dismiss the Petition, ECF No. 11, as the "Reply."

## BACKGROUND

### I. The Crime and Arrest

The prosecution presented evidence of the following facts at trial.[2] On May 17, 2012, at approximately 8:50 p.m., police officers responded to a radio run regarding a shooting near the corner of Dumont Avenue and Van Siclen Avenue in Brooklyn, New York. Opp'n, Ex. A, Trial Transcript ("Tr.") 172:13–17; 173:10–12, ECF No. 6-2.[3] Upon arriving at the scene, first responders discovered the victim, Anthony Cruz, lying unresponsive on the ground and bleeding from the head. Tr. 158:15–20; 159:4–8. The victim had been shot three times in the head and once in the neck with a .25 caliber handgun, and was pronounced dead at the scene by emergency medical personnel. Tr. 158:25–159:3; 419:13–16; Opp'n 2.

At approximately 9:45 p.m. that same evening, detectives received an anonymous Crime Stoppers tip stating that a female had thrown an object, possibly a gun, into a metal trash can in front of a private residence located just around the corner from the shooting at 504 Van Siclen Avenue. Tr. 275:19–22; 276:4–10. Responding officers searched the trash can and recovered a black hooded sweatshirt, a red bandana, and a loaded .25 caliber silver handgun. Tr. 160:2–4; 135:20–21; 136:3–25; 137:5–7. A black do-rag was also recovered from the sidewalk just outside the fenced area. Tr. 136:5–6; 277:5–19.

---

[2] "Because [p]etitioner was convicted, the Court construes the facts in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."); *Cruz v. Colvin*, No. 17-cv-3757, 2019 WL 3817136, at *12 (E.D.N.Y. Aug. 14, 2019) (citing, *inter alia*, *Jackson* and *Ponnapula*).

[3] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

Detectives subsequently obtained surveillance footage from nearby cameras. The footage showed petitioner crossing paths with his girlfriend, Megan Kelly, mere seconds after the shooting. Tr. 389:20–25; 390:19–25. Ms. Kelly testified that petitioner handed her a firearm at that moment. Tr. 392:11–15. The footage then captured Ms. Kelly walking toward Van Siclen Avenue and dumping the object into the trash can from which the evidence was later recovered. Tr. 388:20–24; 392:16–19; 393:13.

Subsequent forensic testing linked petitioner to the murder weapon. A ballistics expert from the New York City Police Laboratory determined that the four discharged shell casings recovered next to the victim's body, as well as the four bullets recovered during the autopsy, were all fired from the .25 caliber handgun retrieved from the trash can. Tr. 368:10–18; 370:6–9. Forensic biologists from the Office of Chief Medical Examiner ("OCME") tested a swab from the exterior of the handgun and recovered a single-source male DNA profile. Tr. 261:21–262:1. Five years later, after investigators located petitioner and obtained a DNA abandonment sample, initial testing confirmed that petitioner's DNA was a match to the single-source profile on the murder weapon. Tr. 301:21–24; 302:17–21; 303:1–4. A subsequent court-ordered sample further confirmed that petitioner was a match to that profile, one so rare that it would be expected to be seen only once in greater than 6.8 trillion people. Tr. 252:11–15; 252:20–24. Petitioner was arrested on November 14, 2017. Tr. 303:5–12.

## II. Trial & Deliberations

Petitioner was charged with one count of Murder in the Second Degree and two counts of Criminal Possession of a Weapon in the Second Degree. Opp'n 3. At trial, defense counsel pursued a misidentification defense, arguing that the evidence was legally insufficient to establish petitioner's presence at the scene or his intent to kill. Counsel

pointed to the presence of an unknown person's DNA on the gun's magazine, the bandana, and the do-rag, arguing this DNA belonged to the "real shooter." Tr. 504:6–10. Counsel also highlighted that petitioner did not match a physical description provided by a witness who saw the victim minutes before the murder with a "very dark skinned" man with a facial scar. Tr. 327:1–6; 327:13–21.

Prior to opening statements, the prosecution moved in limine to introduce testimony regarding the anonymous Crime Stoppers tip that led police to the murder weapon. The prosecution argued that this out-of-court statement was not being offered for the truth of the matter asserted, but for the non-hearsay purpose of explaining why first responders searched a trash can around the corner from the shooting. Tr. 64:9–65:2. Defense counsel consented to the admission of this testimony without objection, relying on the trial court's assurance that it would issue a limiting instruction to the jury. Tr. 65:3–6. When the detective testified about the tip, the trial court instructed the jury that the testimony was offered solely to explain why the police responded to that location. Tr. 276:17–25.

During the trial, the prosecution introduced the ballistics and DNA evidence linking petitioner to the murder weapon. Defense counsel did not move for a *Frye* hearing prior to trial to preclude this evidence, Opp'n 3, nor did counsel object to the admission of the OCME files or ballistics evidence. Tr. 236:19–23; 360:22–25.

The prosecution also called Ms. Kelly to the stand, who testified that petitioner handed her a gun on the night of the shooting. Tr. 392:11–15.

In his summation, defense counsel challenged the reliability of the police investigation and argued that the unknown DNA belonged to the "real shooter." Tr. 504:6–10. In response, the prosecutor's summation highlighted the OCME

criminalist's testimony that the DNA recovered from the exterior of the gun was a single-source profile matching petitioner, arguing that "no one else came in contact with th[e] gun." Tr. 515:20–23. Defense counsel did not object during the summation.

However, defense counsel subsequently conferred with the prosecution and the trial court, and all parties agreed to a curative instruction. Tr. 574:7–23. The court instructed the jury that the fact that petitioner's DNA was the only profile detected "does not necessarily mean that he is the only person who ever touched or handled the weapon." Tr. 576:4–10.

During deliberations, the jury sent a note requesting to see the gun and "receive a copy of the burden of proof." Tr. 624:1–2. Defense counsel did not object to the trial court's proposed response, and the court proceeded to re-read the fundamental legal principles regarding the presumption of innocence and proof beyond a reasonable doubt. Tr. 625:2–11; 630:7–633:3.

On December 11, 2019, the jury returned a unanimous verdict finding petitioner guilty of Murder in the Second Degree and two counts of Criminal Possession of a Weapon in the Second Degree. Opp'n 3. On January 3, 2020, the trial court sentenced petitioner to concurrent terms of imprisonment of twenty-two years to life for the murder count and fifteen years for the weapons possession counts. Opp'n 3.

## III. Direct Appeal

Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, Second Department. Opp'n 3. He argued that his trial counsel was ineffective for (1) failing to challenge the ballistics and DNA evidence by requesting a pre-trial *Frye* hearing; (2) failing to object to testimony about how petitioner became a suspect; (3)

failing to object to the prosecutor's alleged summation misconduct; (4) requesting or consenting to certain jury instructions; and (5) improperly responding to a jury note regarding the burden of proof. Pet'r's State Ct. Br. 29–56, ECF No. 6-3. Petitioner also claimed that his sentence was excessive. Pet'r's State Ct. Br. 56–61.

By order dated May 23, 2023, the Appellate Division affirmed the judgment of conviction. *People v. Russell*, 189 N.Y.S.3d 704, 707 (2d Dep't 2023); Opp'n 4. The Appellate Division held that defense counsel was not ineffective for failing to move for a *Frye* hearing, noting that the New York Court of Appeals' decision requiring such a hearing for DNA evidence analyzed using the OCME's proprietary Forensic Statistical Tool, *People v. Williams*, 35 N.Y.3d 24 (2020), was issued several months after petitioner's trial, and counsel was not ineffective for failing to anticipate its outcome. *Russell*, 189 N.Y.S.3d at 706. The Second Department further held that counsel was not ineffective for failing to object to the prosecutor's summation remarks, as they were either fair reply, fair commentary on the evidence, or adequately addressed by the trial court's curative instructions. *Id.* The Appellate Division found the remaining ineffective assistance contentions without merit and concluded that the sentence imposed was not excessive. *Id.*

Petitioner sought leave to appeal to the New York Court of Appeals, raising the same claims of ineffective assistance of counsel. Pet'r's COA App. 7–10, ECF No. 6-6. By certificate dated September 22, 2023, the application was denied. *People v. Russell*, 40 N.Y.3d 999 (2023).

## IV. District Court Proceedings

Petitioner, proceeding pro se, filed the instant petition for a writ of habeas corpus on September 25, 2024. *See* Pet. Construed liberally, his petition raises the identical

grounds for relief presented to the state appellate courts: that he received ineffective assistance of counsel due to his trial attorney's failure to object to various evidentiary, summation, and jury instruction issues, and that his sentence was excessive. The Second Department was not unreasonable in its analysis of petitioner's ineffective assistance of counsel claims. Therefore, his petition is denied.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *Fox v. Bezio*, No. 10-cv-02986, 2011 WL 837158, at *5 (E.D.N.Y. Mar. 7, 2011) (citing 28 U.S.C. § 2254(d)).[4] Under AEDPA, federal habeas relief is available when "a person in custody pursuant to the judgment of a State court . . . is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal habeas relief is only available for a violation of federal law, as "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

AEDPA provides that an "application for a writ of habeas corpus . . . pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings," unless adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence

[4] Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)–(2). A decision on the merits is "contrary to clearly established" federal law if the state court (1) "arrives at a conclusion opposite to one reached by the Supreme Court on a question of law"; or (2) "decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jones v. Perez*, No. 14-cv-03971, 2015 WL 5923548, at *4 (E.D.N.Y. Oct. 10, 2015) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct controlling legal principle announced by the Supreme Court but unreasonably applies that principle to the facts of the petitioner's case. *Id.* (citing *Williams*, 529 U.S. at 407). This deferential standard of review, known as "AEDPA deference," "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011).

AEDPA deference applies only to federal claims "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d). Merits adjudication occurs when a state court "disposes of the claim on the merits" and "reduces its disposition to judgment." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007). When multiple state courts consider a case, including on direct appeal, the Court reviews the last state court decision that explained its reasoning, even if a higher court reviewed the case. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018) ("[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

When there has been an adjudication on the merits, AEDPA deference "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766,

773 (2010). In practice, this means that a district court may not overturn a state court's application of federal law if it is merely incorrect, but only if it is objectively "unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). In other words, a district court may overturn a state court's application of federal law only if it is "so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents." *Baez v. Royce*, No. 20-cv-01669, 2024 WL 2022090, at *8 (E.D.N.Y. May 3, 2024) (quoting *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013)).

The Court is obliged to construe pro se pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983). "Nevertheless, a pro se litigant is not exempt from compliance with relevant rules of procedural and substantive law." *Williams v. People*, No. 23-cv-10027, 2024 WL 421130, at *1 (S.D.N.Y. Jan. 4, 2024) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

**DISCUSSION**

Each of petitioner's grounds for relief must be denied. Petitioner's ineffective assistance of counsel claims are without merit, the Court is without power to review the sentence he received, and his remaining claim—raised for the first time in his Reply—is procedurally barred.[5]

---

5 Petitioner raised his ineffective assistance claims in his direct appeal to the Second Department and in his application seeking leave to appeal to New York's Court of Appeals. *See* State Ct. Br. 29–56; Pet'r's COA App. 7–10. Therefore, this ground for relief is properly preserved for habeas review. *See Diguglielmo v. Senkowski*, 42 F. App'x 492, 494 (2d Cir. 2002) (summary order) ("State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the

## I. Ground I: Ineffective Assistance of Counsel

At trial, Mr. Russell's counsel, Mark Pollard, argued that petitioner was incorrectly identified as the shooter. Tr. 500:4–504:8. In support of this defense, Mr. Pollard pointed to evidence showing an unknown individual's DNA on the murder weapon, in addition to the presence of an unknown individual who was seen on video footage and by an eyewitness at the location of the crime. Tr. 500:4–504:8. Petitioner argues here, as he did on direct appeal, that he received ineffective assistance of counsel because Mr. Pollard did not vigorously pursue this "wrong man" defense at several stages.[6] For the reasons discussed in more detail below, this argument is without merit.[7]

To prevail on an ineffective assistance claim, petitioner must prove that (1) Mr. Pollard's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for Mr. Pollard's alleged errors, the result of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). To satisfy prong (2), "[t]he likelihood of a different result must be substantial, not

highest state court (after preserving it as required by state law in lower courts); and (ii) informed that court of both the factual and legal bases for the federal claim.").

6 *See* Tr. 167:1–169:13 (attacking credibility of the first officer on the scene); 325:5–327:22 (questioning lead detective about the description he received of another male who was with the victim "minutes before him being shot" that did not match petitioner's physical appearance); 494:13–497:20 (recounting on summation the first responding officer's inability to remember the details of the crime scene and arguing "in a case where you are going to accuse this man of murder you gotta have the first officer there, somebody that you can believe in, that you can trust" but that here, the "[f]irst responder doesn't remember anything"); 500:13–502:24 (highlighting on summation the fact that the lead detective admitted that petitioner did not fit the description of the person that was with the victim minutes before getting shot and telling the jury "[t]hat [other person], ladies and gentlemen, is the shooter").

7 Of note, the record demonstrates that counsel was engaged and willing to object when strategically advantageous, such as successfully objecting to narrative testimony from the victim's foster mother. Tr. 104:6–24.

just conceivable." *Richter*, 562 U.S. at 112. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697. AEDPA review is "doubly deferential" on an ineffective assistance claim because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]" *Woods v. Etherton*, 578 U.S. 113, 117 (2016). Further, it is not enough for petitioner to show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance. *Bell v. Cone*, 535 U.S. 685, 698–99 (2002). To grant relief, a federal habeas court must conclude that the state court "applied *Strickland* to the facts of [petitioner's] case in an objectively unreasonable manner." *Id.* at 699.

A. <u>DNA and Ballistics Evidence</u>

Petitioner first asserts that he received ineffective assistance because his counsel "[f]orfeited [m]eritorious [c]hallenges to key [b]allistics and DNA [e]vidence[.]" Pet. 2. The Court construes petitioner's argument to be the one he raised in his direct appeal, that his counsel was ineffective for failing to request a *Frye* hearing regarding the ballistics and DNA evidence or object to witness testimony regarding the same. *See* Pet'r's State Ct. Br. 35–42.

At trial, Detective Matthew Parlo from the Firearms Analysis Section testified that his ballistics analysis revealed that the firearm police recovered from the trash can was used to shoot the victim, and this analysis was admitted without objection. Tr. 357:3–358:23; 360:19–24; 361:18–25; 362:5–25; 364:5–13; 370:7–22. And criminalist Connie Laycock from the Office of the Chief Medical Examiner ("OCME") testified that her analysis revealed Mr. Russell's complete DNA profile on the firearm. Tr. 261:10–262:19.

The court admitted this testimony into the record without objection from Mr. Pollard. *See* Tr. 261:10–262:19.

First, Mr. Pollard's failure to demand a *Frye* hearing prior to the admission of this evidence did not fall "below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, because at the time of petitioner's trial it is unlikely that such a request would have been granted. At the time of petitioner's trial, the use of ballistics analysis was well established. *See, e.g.*, *United States v. Gil*, 680 F. App'x 11, 13 (2d Cir. 2017) ("[T]he district court did not abuse its discretion in [] noting the consistent admission of ballistics expert opinions generally and [an expert] witness's opinion in particular."); *People v. Johnston*, 145 N.Y.S.3d 233, 242 (4th Dep't 2021) ("[A]lmost daily, ballistic evidence . . . is freely accepted in our courts . . . without the necessity of offering expert testimony as to the scientific principles[.]"). So too with DNA evidence analyzed using the OCME's forensic statistical tool. *See People v. Easley*, 96 N.Y.S.3d 320, 322 (2d Dep't 2019), *aff'd*, 38 N.Y.3d 1010 (2022) ("The [trial court] providently exercised its discretion in denying the defendant's request to conduct a [*Frye*] hearing . . . relating to the forensic statistical tool [] used [by the OCME] to evaluate the . . . DNA mixture found on the trigger of the [] firearm . . . . A court need not hold a *Frye* hearing where it can rely upon previous rulings in other court proceedings as an aid in determining the admissibility of the proffered testimony[.]"); *People v. Walker*, 134 N.Y.S.3d 461, 462–63(2020) ("Considering the law as of the time of the representation, defense counsel was not ineffective for failing to request a *Frye* hearing or object to the admission of certain DNA evidence."). "In light of the well-established law in New York at the time of petitioner's trial, the decision not to request a *Frye* hearing was a reasonable strategy that [fell] well within the realm of competent representation." *Gersten v. Senkowski*, 299 F. Supp. 2d

84, 105 (E.D.N.Y. 2004), *aff'd*, 426 F.3d 588 (2d Cir. 2005); *see Parker v. Graham*, 517 F. Supp. 3d 138, 148 (W.D.N.Y. 2021) ("[T]rial counsel is not deemed to have provided ineffective assistance for failing to file a motion with little chance of success.").[8]

Moreover, as respondent correctly notes, the DNA evidence in part "buttressed defense counsel's misidentification theory," Opp'n. 14, because Mr. Pollard used this evidence to point to the unknown individual's DNA on the firearm, Tr. 263:11–266:18. Thus, even apart from the *Frye* issue, this Court ultimately views Mr. Pollard's decision not to challenge admission of the DNA evidence as one of the "broad range of strategic decisions that fall within the purview of trial counsel[.]"*Licausi v. Griffin*, 460 F. Supp. 3d 242, 259 (E.D.N.Y. 2020). The Court declines to "second-guess trial strategy simply because the chosen strategy has failed." *Clanton v. Rivera*, No. 06-cv-04756, 2008 WL 2839712, at *26 (S.D.N.Y. July 22, 2008), *report and recommendation adopted*, 2010 WL 1685414 at *4 (S.D.N.Y. Apr. 22, 2010).

B. Failure to Object Regarding Criminal Propensity and Hearsay Evidence

Petitioner contends that his trial counsel rendered ineffective assistance by failing to object to testimony regarding an anonymous Crime Stoppers tip, arguing it was inadmissible hearsay. Specifically, petitioner challenges Detective Smelley's testimony that a white or Hispanic female threw an object, possibly a gun, into a trash can at 504

---

[8] After Mr. Russell's trial, the New York Court of Appeals issued a decision requiring a *Frye* hearing before admitting DNA evidence from the OCME, *see People v. Williams*, 35 N.Y.3d 24, 40 (2020). But under the *Strickland* standard, ineffective assistance of counsel claims are to be "viewed as of the time of the trial counsel's conduct." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Thus, as the Second Department correctly concluded, "defense counsel was not ineffective for failing to move for a hearing" or for "failing to anticipate [*Williams*'] outcome. *People v. Russell*, 189 N.Y.S.3d 704, 706 (2d Dep't 2023).

Van Siclen Avenue. Tr. 276:4–10.[9] Under New York law, a trial court may admit an out-of-court statement "not for its truth, but to provide background information as to how and why the police pursued and confronted [a] defendant." *Flournoy v. Brown*, No. 09-cv-02338, 2012 WL 1450288, at *8 n. 10 (E.D.N.Y. Apr. 26, 2012) (quoting *People v. Tosca*, 98 N.Y.2d 660, 661 (2002)).

Mr. Pollard's lack of objection to admission of the Crime Stoppers tip does not constitute ineffective assistance. First, given that Detective Smelley's testimony was not offered for the truth of the matter but to explain why first responders searched a trash can around the corner from the shooting, Tr. 64:9–65:2, any objection by trial counsel would very likely have been overruled. Mr. Pollard's counsel "could not [] have been ineffective for failing to make a[n] [objection] that would have been futile." *United States v. Abad*, 514 F.3d 271, 276 (2d Cir. 2008).

Moreover, petitioner has not demonstrated prejudice from the admission of this evidence, as the trial court paused Detective Smelley's testimony to instruct the jury that the tip was not offered for the truth of the matter asserted, but to "explain why the police responded to 504 Van Siclen Avenue." Tr. 276:17–25. Given this curative instruction, the Second Department was correct to conclude that it was not "reasonably likely the result

---

9 Construed liberally, petitioner also challenges Mr. Pollard's failure to object to the prosecution's reference to "unnamed informants" who implicated petitioner in the charged crime. *See* State Ct. Br. 43–44 (arguing that government witness testimony that the police "learned that the female white was named Megan Kelly and we learned that the male black was named Ronald Russell," Tr. 295:16–18, caused the jury to "speculate[] about the existence of uncalled witnesses[.]"). First, petitioner provides no basis for the conclusion that the police learned this information from informants. Second, and as with the Crime Stoppers tip, evidence offered as "background information as to . . . why the police pursued" petitioner, *Flournoy*, 2012 WL 1450288, at *8, is admissible even over a hearsay objection.

[of the trial] would have been different," *Richter*, 562 U.S. at 112, had Mr. Pollard objected.

Petitioner next faults trial counsel for failing to object to testimony that he was present at the Yonkers Police Department Detective Division when police collected his DNA abandonment sample. Pet. 4; *see* Pet'r's State Ct. Br.44–45. According to petitioner, this was improper criminal propensity evidence. Pet. 4.

Even assuming counsel erred by not objecting to this testimony, petitioner cannot demonstrate prejudice. The prosecution presented no evidence detailing why petitioner was in custody, and indeed, the reference was isolated and fleeting. Tr. 302:9–16.[10] As with the Crime Stoppers tip, even had this testimony been excluded, it cannot be said that there is a "reasonable probability" that the "result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Therefore, the Second Department was not unreasonable for so concluding.

C. Failure To Object to Alleged Summation Misconduct

Next, Petitioner contends that Mr. Pollard's failure to object to certain comments made by the prosecutor during summation constitutes ineffective assistance. Pet. 4. At trial, the prosecutor stated that the DNA evidence implicated "[petitioner and Ms. Kelly] together and no one else," Tr. 525:19–24, and that based on "science" that "doesn't lie," Tr. 535:1–4, "no one else came in contact with [the] gun" Tr. 515:17–516:20. The prosecutor further argued that other than petitioner, "no one else's DNA is on that gun,"

[10] Question: Can you tell us the type of abandonment sample that you collected? Answer: In the hospital he had an -- I believe it was a yellow plastic container. He was -- I collected that, and also back at the Yonkers Police Department Detective Division I collected a cup, I believe it may have been bandages, and a wrist bracelet from the hospital, the plastic wrist bracelets that they put on you in the hospital.

Tr. 517:21–24; *see also* 525:15–18, despite the evidence, described *supra*, that an unknown individual's DNA was in fact found on the firearm. Mr. Pollard did not object to any of these statements.

But as with the Crime Stoppers tip, the trial court gave a curative instruction on this point, telling the jury that "[t]he fact that [petitioner's] DNA profile is the only profile detected does not necessarily mean that [petitioner] was the only person who ever touched or handled the weapon." Pet'r's State Ct. Br. 47; Tr. 576:4–10. Assuming that Mr. Pollard should have objected to the prosecutor's "technically inaccurate" statements, *Russell*, 189 N.Y.S.3d at 706–07, the combination of the trial court's curative instruction along with its general instructions that "whatever the lawyers say, and however they say it, it is simply argument submitted for [the jury's] consideration," that "if a lawyer asserts as fact something that is not based on the evidence, [the jury] must disregard it," and that "nothing the lawyers say in their summation is evidence," Tr. 490:12–491:1, arguably alleviated any prejudice that resulted from him failing to do so. "[T]he law recognizes a strong presumption that juries follow limiting instructions." *United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006). Accordingly, the Second Department's determination that defense counsel's failure to object to the prosecutor's statements did not constitute ineffective assistance was a reasonable application of the law.[11]

---

[11] Additionally, it is well settled in this Circuit that that counsel's failure to object to a prosecutor's summation will typically not be grounds for an ineffective assistance claim as it represents a strategic decision to avoid drawing undue attention to the unfavorable comment or comments. *Jackson v. Conway*, 448 F. Supp. 2d 484, 492 (W.D.N.Y. 2006); *accord Gatto v. Hoke,* 809 F. Supp. 1030, 1039 (E.D.N.Y.), *aff'd*, 986 F.2d 500 (2d Cir. 1992) ("[C]ounsel's failure to object to the prosecutor's summation represents his tactical decision to avoid underscoring the prosecutor's statements so as to draw the jury's attention to them."). The Court declines to "confus[e] true ineffectiveness with mere losing tactics and accord[] undue significance to retrospective analysis." *Fagan v. Kuhlman*, 267 F. Supp. 2d 388, 408 (E.D.N.Y. 2003). Ultimately, "[t]he object of an

D. Jury Procedure

Finally, petitioner faults his trial counsel for requesting an allegedly misleading jury instruction and for "acquiesce[ing] to a response to a jury note that omitted the standards for evaluating . . . circumstantial proof[.]" Pet. 4. The Court construes petitioner's first argument to be the one raised in his direct appeal, that his counsel's request for a "witness plus" instruction based on Ms. Kelly's testimony that he was the man depicted in the surveillance video was "entirely inappropriate" because there "was no issue regarding Ms. Kelly's testimony being accurate." Pet'r's State Ct. Br. 49.

First, the instruction was given not because of any question about the accuracy of Ms. Kelly's testimony, but because testimony had been provided by more than one witness during the course of the trial. Tr. 472:16–473:7 (The Court: "So the only difference between the witness plus and the one witness instruction is the two paragraphs about our law being, or system of justice being deemed concerned that an innocent person not be convicted of a crime that he or she did not commit when the evidence comes from one witness. So, both sides having agreed that it's the witness plus instruction that is applicable here, I will not read those two paragraphs on page one of the [identification] instruction.").

Second, a central issue in petitioner's trial was whether the petitioner had been correctly identified as the person who committed the charged crime. Accordingly, Mr.

---

ineffectiveness claim is not to grade counsel's performance." *Garner v. Lee*, 908 F.3d 845, 861 (2d Cir. 2018) (quoting *Strickland*, 466 U.S. at 697).

Powell's performance was not deficient for requesting that the trial court instruct the jury on how to evaluate witness testimony on that very point.[12]

Petitioner next argues that his counsel was deficient for consenting to a "custodial statement" instruction. Pet. 4; Pet'r's State Ct. Br. 49–51. First, petitioner's custodial statement, which—contrary to his argument—was properly admitted into evidence, Tr. 310:12–25, was a *denial* of guilt. *See* Pet'r's State Ct. Br. 49–50 ("There was no question here that appellant, in fact, made the videotape-recorded statement, in which he denied guilt, and that it was made voluntarily."). It is unclear why defense counsel would have objected to the trial court's instruction that the jury was allowed to "consider [the

---

12 The trial court gave the following instruction:

> As you know, an issue in this case is whether the defendant has been correctly identified as the person who committed the charged crimes. The People have the burden of proving beyond a reasonable doubt not only that a charged crime was committed, but that the defendant is the person who committed the crime. Thus, even if you are convinced beyond a reasonable doubt that a charged crime was committed by someone, you cannot convict the defendant of that crime unless you are also convinced beyond a reasonable doubt that he is the person who committed that crime. In examining the testimony of any witness who identified the defendant as that person, you should determine whether that testimony is both truthful and accurate. With respect to whether the identification is truthful, that is, not deliberately false, you must evaluate the believability of the witness who made an identification. In doing so you may consider the various factors for evaluating the believability of a witness's testimony that I listed for you a few minutes ago. With respect to whether the identification is accurate, that is, not an honest mistake, you must evaluate the witness's intelligence and capacity for observation, reasoning and memory and determine whether you're satisfied that the witness is a reliable witness who had the ability to observe and remember the person in question. Further, the accuracy of a witness's testimony identifying a person also depends on the opportunity the witness had to observe and remember that person.

Tr. 557:8–558:14. The trial court then went on to provide several factors that the jury should consider when evaluating the accuracy of identification testimony. Tr. 558:14–560:8.

statements] in [their] evaluation of the evidence." Tr. 554:17–18. Because "[t]he instruction given was not improper," petitioner's claim of ineffective assistance on this ground is without merit. *People v. Huger*, 26 N.Y.S.3d 131, 131 (2d Dep't 2016).

Petitioner also argues that his trial counsel inappropriately consented to an inadequate jury response. Pet. 4. On the second day of deliberations, the jury requested a "copy of the burden of proof." Tr. 624:1–2. Defense counsel did not object to the trial court's proposed response, and the court proceeded to re-read the fundamental legal principles regarding the presumption of innocence and proof beyond a reasonable doubt. Tr. 625:3–11; 630:7–633:3. In his direct appeal, petitioner argued that defense counsel should have objected and requested a response including "all the principles of law necessary for evaluating the circumstantial proof of second-degree murder." Pet'r's State Ct. Br. 51. But Mr. Powell had already successfully moved for the inclusion of an instruction on circumstantial evidence, which had been read in full to the jury. Tr. 462:10–14; 465:4–467:16; 539:4–542:2. His consent to the trial court's response to the jury's straightforward request was therefore not outside the "range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Accordingly, even if evaluated in the first instance, Mr. Pollard's actions with respect to the jury procedures reflect that he "rendered adequate assistance" and "exercise[d] [] reasonable professional judgment." *Strickland*, 466 U.S. at 690.

* * *

In sum, many of the decisions that petitioner faults were his counsel's strategic choices that were ultimately unsuccessful. And for those decisions that could arguably be classified as errors, petitioner has not demonstrated that, had they been avoided, there is a reasonable probability the result of the trial would have been any different. Therefore,

the Second Department reasonably applied the law when it denied petitioner's ineffective assistance of counsel claims and habeas relief on these claims is not available.

## II. Ground II: Excessive Sentencing

Petitioner challenges his sentence as excessive. "It is well-established that when a sentence falls within the range prescribed by state law, the length of the sentence generally may not be raised as a basis for federal habeas relief." *Silva v. Keyser*, 271 F. Supp. 3d 527, 545 (S.D.N.Y. 2017); *see also White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."). Petitioner was sentenced to concurrent terms of twenty-two years to life imprisonment for his murder charge, a Class A-I felony, and fifteen years' imprisonment for the weapons possession charges, both Class C felonies. Because petitioner's sentence falls within New York's statutory range, *see* N.Y. Penal Law § 70.00(2)(a) (authorizing a maximum sentence of life in prison for Class A felonies); N. Y. Penal Law § 70.00(3)(a)(i) (authorizing a minimum sentence of fifteen to twenty-five years for Class A-I felonies); N.Y. Penal Law §70.02(3)(b) (authorizing a sentence of three and a half to fifteen years for Class C felonies), this Court has no authority to review this claim. *Meachem v. Keane*, 899 F. Supp. 1130, 1139 n.5 (S.D.N.Y. 1995) ("The Court notes that . . . Petitioner's sentencing claim . . . is not cognizable on habeas review because it does not present a constitutional question.").

## III. Ground III: Sufficiency of the Evidence

Construed liberally, petitioner appears to advance—for the first time and in his Reply—a sufficiency of the evidence argument. *See* Reply 7–10. This argument is of no help to petitioner, however, because it was not raised in his direct appeal and is therefore procedurally barred.

A federal habeas court typically cannot review an unexhausted claim, that is, any claim not raised on direct appeal in state court. *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000). When a petitioner fails to abide by state procedural rules and no state remedies remain available, however, his claim is deemed exhausted for purposes of a habeas application. *Id.* New York permits only one application for direct review. *Id.* (citing N.Y. Rules of Court, Court of Appeals, § 500.10(a). Because defendant failed to raise any sufficiency of the evidence claim on direct appeal, he may not seek collateral relief in New York courts. *See* N.Y. Crim. Proc. Law § 440.10(2)(c). In short, petitioner failed to raise this claim in the ordinary appellate process and can no longer do so. Accordingly, it is procedurally defaulted. *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) ("The failure to raise issues before the Court of Appeals precludes further consideration in the New York courts because each [petitioner] has already made the one request for leave to appeal to which he is entitled. Nor may [petitioners] now seek collateral review. It would thus be fruitless to require [petitioners] to pursue these claims in state court, and we deem the claims exhausted. However, the same procedural defaults prevent us from addressing the merits of these claims.").

A procedural default in state court will bar federal habeas review "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A habeas petitioner establishes just cause if he can show that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Even construed liberally, petitioner's arguments do not establish cause for the default. *See* Reply 7, 9 (arguing that the evidence

"pointed as [much] to innocence as to guilt" and that there was "insufficient circumstantial evidence to support" his conviction because of "incompetent or fraudulent [] prosecution experts with invalid forensic testimony"). Nor has he established that this is "the extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Flores v. Rivera*, No. 06-cv-13517, 2009 WL 1110578, at *4–5 (S.D.N.Y. Apr. 23, 2009) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied and the case is dismissed. As Mr. Russell has failed to make a substantial showing that he was denied any constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c).

**SO ORDERED.**

*/s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated: October 1, 2026
Brooklyn, New York